OPINION
{¶ 1} Defendant-appellant Robert L. Vela appeals from his conviction and sentence for one count of trafficking in cocaine, one count of trafficking in marijuana, one count of possession of cocaine, and one count of possession of criminal tools. Vela was indicted on said charges on April 22, 2004.
 {¶ 2} On September 9, 2004, Vela filed a motion to suppress any evidence seized from his vehicle as a result of a warrantless search. After an evidentiary hearing on October 21, 2004, the trial court overruled Vela's motion on October 27, 2004. Vela entered a no contest plea to the charges against him on November 8, 2004.
 {¶ 3} On January 21, 2005, the trial court sentenced Vela to two years in prison on count one of the indictment for trafficking in cocaine, a felony of the third degree. On counts two and four of the indictment for trafficking in marijuana and possession of criminal tools, both felonies of the fifth degree, Vela was sentenced to six months incarceration. The trial court ordered that those sentences be served concurrently. The trial court found the third count for possession of cocaine to be allied with the first count for trafficking in cocaine and did not impose any additional prison term. Vela was also required to pay a mandatory $5,000.00 fine.
 {¶ 4} For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 5} Around 8:00 p.m. on April 16, 2004, Sergeant Steve Lane of the Xenia Police Department was on routine patrol in the eastern portion of Xenia, Ohio. Sgt. Lane, an eleven year veteran police officer, testified that prior to becoming a sergeant in the patrol division, he was assigned to the Greene County Drug Task Force. While assigned to the task force, Sgt. Lane testified that he received specialized drug investigation training from the DEA. He also testified that he had conducted numerous drug investigations during his time on the task force, many in the east end of Xenia. Sgt. Lane testified that the east end of Xenia is known for its high rate of illegal drug activity.
 {¶ 6} Sgt. Lane testified while on routine patrol, he observed a black Cadillac with extremely dark window tinting parked illegally on East Church Street. Sgt. Lane testified that although he was suspicious at this point, he decided to drive around the block and wait to see what the operator of the vehicle would do. When he observed the vehicle again, it had moved into the parking lot of the Xenia Board of Education and was now parked next to another vehicle that faced in the opposite direction.
 {¶ 7} Sgt. Lane testified that he observed an individual remove something from the black Cadillac and place it in the other vehicle. That same individual then returned to the Cadillac and handed the driver a package approximately the size of a baseball cap. Based on his professional experience, Sgt. Lane testified that he believed that he had just observed a hand to hand drug transaction.
 {¶ 8} Sgt. Lane testified that when he attempted to investigate, the Cadillac abruptly exited the parking lot. Upon following the vehicle for a short time, Sgt. Lane noted that the driver accelerated rapidly and made quick turns without signaling properly. At this point, Sgt. Lane testified that he made the decision to initiate a stop of the Cadillac. Just as Sgt. Lane turned on his lights and siren, the Cadillac pulled over to the side of the street, and the driver, appellant Vela, began to exit the vehicle. After three verbal commands from Sgt. Lane to remain in the vehicle, Vela got back in the driver's seat but left the door slightly ajar. Sgt. Lane approached the vehicle and began questioning Vela about his actions up to that point.
 {¶ 9} When asked about the window tint on his vehicle, Vela acknowledged that it was too dark and that he had recently been cited for it. Sgt. Lane asked Vela for his driver's license, and Vela was only able to produce a Wal-Mart employee I.D. Sgt. Lane testified that during this initial questioning, Vela would not make eye-contact with him and seemed very distracted. In light of Vela's unusual and erratic behavior, Sgt. Lane ordered Vela out of the vehicle so that he could perform a pat-down for weapons. Vela, however, did not immediately comply with Sgt. Lane's command but instead put the car keys into the ignition. Sgt. Lane ordered him out of the car again, but Vela turned the keys in the ignition forward but did not start the car. To emphasize his order, Sgt. Lane placed his hand on Vela's shoulder and told him again to exit the vehicle. Vela got out of the car at this point.
 {¶ 10} Once outside the vehicle, Sgt. Lane ordered Vela to turn away from him and put his hands behind his back. Vela did not immediately comply, but after a second command from Sgt. Lane, he turned around and allowed himself to be patted-down. Sgt. Lane testified that once he reached appellant's front right pant's pocket, Vela began to struggle, and the two wrestled with each other for approximately 20-30 seconds before Sgt. Lane was able to handcuff Vela behind his back and call for assistance. Once handcuffed, Vela quit struggling.
 {¶ 11} After being placed in the back of Sgt. Lane's cruiser, Vela told the officer that there was a bag of marijuana in his right front pocket, and Sgt. Lane confiscated the drugs. Sgt. Lane testified that at this point he was contemplating only citing Vela for obstructing justice and marijuana possession and then letting him go. Concerned for his own safety, Sgt. Lane decided to investigate the "lunge area" of Vela's vehicle because it was his experience that many times guns are present where drugs are discovered. Additionally, Sgt. Lane believed that Vela's erratic and uncooperative behavior dictated that he search the interior of the vehicle. Under the driver's seat of the Cadillac, Sgt. Lane discovered a quarter-pound of marijuana and ten small bags of cocaine. Vela later stated that the drugs were for personal use.
 {¶ 12} Vela was subsequently taken into custody, charged, and ultimately convicted of the aforementioned charges. From his conviction and sentence, Vela appeals.
 II {¶ 13} Vela's first assignment is as follows:
 {¶ 14} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF HIS VEHICLE."
 {¶ 15} In his first assignment of error, Vela contends that the trial court erred when it overruled his motion to suppress and found that Sgt. Lane possessed the proper justification to search the lunge area of his vehicle. Vela argues that nothing about his behavior prior to and during his detention gave rise to a reasonable suspicion that he was armed and dangerous or possessed a weapon in his vehicle. We disagree.
 {¶ 16} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A warrantless search is "per se unreasonable — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507. The state bears the burden of establishing the application of one of the exceptions to the warrant requirement. State v.Kessler (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252.
 {¶ 17} Vela does not dispute that the initial stop of his vehicle for a window tint violation was lawful nor does he dispute the legality of the pat-down performed by Sgt. Lane. The question presented to this Court strictly concerns the legality of the subsequent search of the lunge area of the vehicle and the seizure of the contraband. Vela asserts that Sgt. Lane lacked the requisite reasonable suspicion to search the vehicle for weapons. In light of the principles set forth in Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1879, in Michigan v. Long (1983),463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 3481, the U.S. Supreme Court held that:
 {¶ 18} "* * * [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on `specific and articulable facts, which taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect may gain immediate control of the weapons."
 {¶ 19} In State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus, the Ohio Supreme Court stated:
 {¶ 20} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."
 {¶ 21} We recently held in State v. Howard (September 24, 2004), Montgomery App. No. 20321, that "a like standard applies to the Officer's search of of a detained driver's motor vehicle before he is allowed to return to it, whether or not the driver was patted down. The Officer may search the vehicle if facts and circumstances develop which give rise to a reasonable and articulable suspicion that the motorist is a danger to the Officer and may gain access to a weapon inside the vehicle."
 {¶ 22} Based on the totality of the circumstances in the case before us, Sgt. Lane's search of the lunge area in Vela's vehicle was justified. Relying on his professional experience and training, Sgt. Lane believed that he witnessed Vela involved in a drug transaction prior to the stop. Sgt. Lane testified that oftentimes where illegal drugs are found, guns are also present.
 {¶ 23} After Sgt. Lane started following him, Vela began speeding and making abrupt turns without signaling. After he initiated the stop, Sgt. Lane had to order Vela three times to stay in his car. Upon approaching the vehicle, Sgt. Lane observed that Vela was distracted and non-compliant when he put the keys in the ignition and attempted to start the vehicle. Sgt. Lane commanded Vela to exit the vehicle three times before he complied. While he was being patted-down, Vela began struggling with Sgt. Lane for approximately 20-30 seconds. When all of these events are viewed together, Sgt. Lane clearly possessed a reasonable and articulable suspicion that Vela may have had a weapon inside his vehicle. The erratic and uncooperative nature of Vela's actions would have caused a reasonable person to be concerned for his or her own personal safety as well as the safety of others. Thus, Sgt. Lane was justified when he performed a limited search of the lunge area of the vehicle and discovered said contraband. The Fourth Amendment does not require an officer to ignore illegal contraband discovered during a legitimate search of the interior of a suspect's vehicle for weapons.Long, supra, citing, Coolidge v. New York (1971), 403 U.S. 443, 465,91 S.Ct. 2022, 2037.
 {¶ 24} Vela's first assignment of error is overruled.
 II {¶ 25} Vela's final assignment is as follows:
 {¶ 26} "THE TRIAL COURT ERRED IN IMPOSING A MANDATORY TWO YEAR SENTENCE UPON APPELLANT, AS THE SENTENCE IMPOSED WAS EXCESSIVE AND IN VIOLATION OF SECTIONS 2929.13 AND 2929.14 OF THE OHIO REVISED CODE."
 {¶ 27} In his final assignment of error, Vela contends that the trial court exceeded its discretion when it imposed a mandatory two year sentence for the charge of trafficking in cocaine. Vela asserts that pursuant to R.C. §§ 2929.13 and 2929.14, he was entitled to receive the minimum mandatory prison term of one year because he was a first time offender. We disagree.
 {¶ 28} R.C. § 2929.14(B) reads as follows:
 {¶ 29} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record thatthe shortest prison term will demean the seriousness of the offender'sconduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 30} After considering Vela's pre-sentence investigation report, the trial court explicitly found that sentencing Vela to the minimum term would "demean the seriousness of the Defendant's conduct as indicated on the record by this Court, and will not protect the public from future crime by the Defendant or others for the same reasons the Court has previously indicated on the record." Trans. of Sentencing Hearing (January 21, 2005), 7-8. The court need only state the finding that a minimum sentence is inappropriate, not the reasons in support of the finding.State v. Edmonson (1999), 86 Ohio St.3d 324, 328, 715 N.E.2d 131. It is apparent from the record that the trial court made the proper findings with respect to the imposition of Vela's non-minimum sentence.
 {¶ 31} Lastly, Vela argues that there are no facts in the pre-sentence report which support the conclusion reached by the trial court. This contention lacks merit. When Vela was arrested, a bag of marijuana was taken from his person. Additionally, a quarter of a pound of marijuana, as well as approximately ten small bags of cocaine, were removed from his vehicle. The facts show that Vela also resisted arrest. Clearly, the trial court was well within its discretion when it found that imposition of the minimum sentence would demean the seriousness of the offense.
 {¶ 32} Vela's final assignment of error is overruled.
 III {¶ 33} Both of Vela's assignments of error having been overruled, the judgment of the trial court is affirmed.
Fain, J. and Young, J., concur.
(Hon. Frederick N. Young retired from the Second District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).